IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FILED
AUG 2 7 2001
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| PROGRESSIVE INDUSTRIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV-01-PT-0926-E |
| ) | |
| BRADLEY PULVERIZER COMPANY, ) | |
| ) | |
| Defendant. ) | |

ENTERED
AUG 2 7 2001

**MEMORANDUM OPINION**

This cause comes to be heard upon defendant Bradley Pulverizer Company's (Bradley) Motion to Dismiss for Lack of Personal Jurisdiction or, In the Alternative, to Transfer to the Middle District of Pennsylvania filed on June 22, 2001.

**FACTS**

The Plaintiff, Progressive Industries (Progressive), is an Alabama corporation with its primary place of business at 485 Stewart Boulevard, Sylacauga, Alabama 35150. Progressive manufactures classifiers, which are machines that separate different size materials such as broken rocks or minerals.

The Defendant, Bradley, is a Delaware corporation having its principal place of business at 123 South 3rd Streeet, Allentown, Pennsylvania 18105. Bradley manufactures pulverizers, which are machines for breaking up rocks or minerals into smaller particles.

In 1986, Bradley entered into a Test Marketing Agreement (TMA) with Progressive's predecessor, Amvest Progressive Industries (Amvest), a Virginia Corporation. The TMA was a one year agreement. Attachment B to the TMA provided that should the one year test be successful, the parties would agree to enter into a joint marketing agreement. In 1987 when the

TMA expired, the parties did not enter into any further written agreements. However, the parties continued to conduct business in accordance with the provisions set forth in the two-page attachment to the TMA.

Sometime after the TMA was entered into by Bradley and Amvest, Progressive's current President, Don Jones, and his then colleague, Dan Taylor, acquired Progressive from Amvest. A meeting was arranged between representatives of the two parties in Alabama in 1988. At this meeting a document entitled "Proposed Progressive-Bradley Arrangement" (PPBA) was discussed. At some point during this meeting the PPBA was initialed by Jim and David Fronheiser (President and Vice President of Bradley) and Don Jones and Dan Taylor (President and former part-owner of Progressive). In the PPBA, Bradley agreed to sell "Roller-Mills with RMC option" manufactured by Progressive. Bradley agreed to represent Progressive in the United States, Europe, Middle East, and African markets. Progressive agreed to supply to Bradley the rotor assembly. The PPBA contained a non-compete clause in which Bradley agreed to not manufacture or sell any air classifying equipment anywhere in the world for a fifteen year period. The parties have continued this "loose marketing cooperation" since the PPBA was initialed.

In the early 1990s, Bradley was marketing the Progressive classifier in Europe. Bradley converted a Progressive brochure for the classifier into metric units and translated the brochure into different languages. The brochure only had Bradley's name on it. In 1998, Bradley placed this brochure on its internet web site. Progressive objected to this course of action and Bradley removed the brochure from the internet.

Progressive alleges that Bradley advertised, manufactured, and sold centrifugal air classifying apparatuses, using counterfeit trademarks containing Progressive's MICRO-SIZER

and MICRO-SEAL trade names. It filed this civil action for violation of Section 43 of the Lanham Act for unfair competition, for violation of Section 43(a) of the Lanham Act for dilution, for common law unfair competition dilution and unjust enrichment for trademark infringement, false advertising, copyright infringement, patent infringement, and breach of contract.

## FACTS TENDING TO ESTABLISH OR NOT ESTABLISH PERSONAL JURISDICTION

**Plaintiff**

Progressive argues that the following facts establish both general and specific jurisdiction in this case:

(1) Progressive and its predecessor, Amvest, have been doing business with Bradley since 1985. Communications between Progressive and Bradley have consisted of phone calls, letters, facsimiles, and invoices.

(2) From 1986 until the present, Progressive has sold over $600,000 worth of equipment and material to Bradley. Bradley has sold at least $70,000 of equipment to Progressive during this time period.

(3) The sales from Bradley were shipped to Sylacauga, Alabama.

(4) The parties continue to exchange quotes on certain equipment for various projects. The last quote exchange occurred June 4, 2001.

(5) Bradley has wired money for equipment and material to Progressive's bank in Sylacauga, Alabama.

(6) Representatives from Bradley have visited Progressive in Alabama on eight occasions since 1988.

(7) Bradley owns a piece of equipment that is installed as a fixture in Progressive's Sylacauga Plant.

**Defendant**

Bradley argues that the following facts negate both general and specific jurisdiction in this case:

(1) Bradley has never maintained an office, plant, or warehouse in Alabama and has not rented or owned any real property in Alabama.

(2) Bradley has never had any bank accounts in Alabama.

(3) Bradley has never had a telephone listing in Alabama.

(4) Bradley has no employees in Alabama.

(5) In the year 2000, Bradley sold $7,838 worth of parts to a customer in Alabama. This represented less than one quarter percent of Bradley's sales volume in 2000 which was $3,013,931.

(6) Bradley has a manufacturing representative, TEC Engineering Associates, which represents Bradley in the southeast United States, including Alabama. Since August 12, 1985, representatives of TEC Engineering have only closed one order in Alabama.

(7) Bradley entered into the TMA with Progressive's predecessor, Amvest, which was a Virginia corporation.

## ARGUMENT

Bradley makes three arguments in its motion. First, it argues that this court should dismiss this action pursuant to *Fed. R. Civ. P.* 12(b)(2) for lack of personal jurisdiction. Second, if this court decides not to dismiss, Bradley argues that the action should be transferred to the Middle District of Pennsylvania pursuant to 28 U.S.C. 1406(a). Finally, Bradley argues that

transfer is appropriate because the interests of justice weigh heavily in favor of transfer pursuant to 28 U.S.C. § 1404(a).

**Personal Jurisdiction**

Bradley contends that this court does not have personal jurisdiction over it under the Alabama long-arm statute, *Ala. R. Civ. P.* 4.2(a)(2). Bradley notes that Alabama's long-arm statute has been interpreted to extend as broad as the permissible limits of due process. *De Sotacho, Inc. v. Valnit Indus., Inc.*, 350 So. 2d 447 (Ala. 1977). It states that Alabama courts utilize a two-prong test to determine whether personal jurisdiction exists over a defendant: 1) whether it is foreseeable to the nonresident defendant that it will be sued in the state; and 2) the degree of contact that the nonresident defendant has with the state. *Ala. Waterproofing Co. v. Hanby*, 431 So. 2d 141 (Ala. 1983). Bradley contends that an application of this test reveals that personal jurisdiction is not appropriate.

First, Bradley argues that it was not foreseeable that it would be sued in Alabama. In support of this proposition, Bradley asserts that it has never maintained an office, plant, or warehouse in Alabama and has not now or ever owned or rented any real property in Alabama. It also maintains that it has never had a telephone listing, a bank account, or employees in Alabama. Bradley also finds it important that the acts complained of stem from its making rotors for classifiers in the UK after 1995 and selling them to its customers outside the United States. Furthermore, Bradley claims that the PPBA does not subject it to jurisdiction in Alabama for two reasons. First, it claims that there is not a sufficient relationship between the breach of contract allegations and any conduct of which Progressive complains.[1] Second, it states that

---

[1] Bradley substantively argues that the PPBA non-compete clause extends the no-compete obligation beyond the date which the underlying patent expires. Consequently, it is void as against public policy and

5

there is no "clear, firm nexus" between its acts and the consequences of which Progressive is complaining.[2] *Duke v. Young*, 496 So. 2d 37, 39 (Ala. 1986). Finally, Bradley alleges that Progressive's other claims do not provide a basis for jurisdiction.[3]

Second, Bradley argues that it does not have a sufficient degree of contact with the State of Alabama such that personal jurisdiction would be appropriate. Bradley explains that the Alabama long-arm statute provides that a nonresident defendant has sufficient contacts with the state when it is "(A) transacting any business in this state; (B) contracting to supply services or goods in this state; . . . or (I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action . . . ." *Ala. Power Co. v. VSL Corp.*, 448 So. 2d 327, 328 (Ala. 1984). Addressing the "contacts" argument, Bradley first argues that it does not transact business within the State of Alabama. Bradley emphasizes that Alabama courts have found that the following factors are indicative of doing business in the state: (1) presence of an authorized agent in the state; (2) regular and systematic solicitation of orders by these salesman; and (3) continuous flow of its products into the state. *Boyd v. Warren Paint & Color Co.*, 49 So. 2d 559 (Ala. 1950). Bradley argues that the first factor is not present because, although it has a sales representative that services Alabama, the representative has not closed an order in Alabama since 1987. Consequently, Bradley asserts that the second factor is not present because its sales

---

unenforceable.

[2] Bradley contends that there is no clear nexus because Progressive alleges a breach of the non-compete clause of the PPBA based on its conduct in Korea, not Alabama.

[3] Bradley argues that Progressive's claims for trademark infringement, patent infringement, copyright infringement, and unjust enrichment do not provide personal jurisdiction in Alabama because all the events upon which the complaint is based occurred outside the United States.

representative has not closed a sale in Alabama since 1987. Finally, Bradley contends that the third factor is not present because it sold less than one-quarter of one percent of its total sales volume to its only remaining customer in Alabama.

Still addressing the "contacts" argument, Bradley claims that it does not contract or supply services or goods in Alabama. Relying on Professor Hoffman's civil procedure treatise, Bradley claims that substantial activity in the state will not support jurisdiction unless the Progressive's claims arise out of it contracting to supply goods or services in Alabama. Hoffman, Jerome A. and Sandra C. Guin, *Alabama Civil Procedure*, § 2.34. In support of this proposition, Bradley claims that there has been no valid written contract between the parties since 1986, no executive has been to Alabama since 1996, and no manufacturers' representatives have closed an order since 1987.

Finally, Bradley argues that it has not maintained minimum contacts with the State of Alabama such that it would be fair and reasonable to require it to defend an action in Alabama. Bradley contends that this court does not have general or specific jurisdiction over it. It argues that there is no general jurisdiction because its activities have not been substantial, continuous, and/or systematic in the State of Alabama. Furthermore, it states that specific jurisdiction would not be appropriate because the original contract Bradley entered into was with Amvest, a Virginia corporation. It concludes this argument by asserting that no valid contract was negotiated in or executed in Alabama.

In response, Progressive argues that the requirements of the Alabama long-arm statute have been met. Progressive agrees with Bradley that the Alabama long-arm statute extends to the limits of due process. However, Progressive argues that Bradley's reliance on the Alabama Supreme Court's interpretation of the Due Process Clause is misplaced. It asserts that federal

7

courts need only look to federal precedent when the state forum's long-arm statute extends to the limits of due process. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 n.3 (11th Cir. 1988). With that said, Progressive contends that under Federal Due Process Clause analysis, this court has general and specific jurisdiction over Bradley.

Progressive first asserts that this court has general jurisdiction of Bradley because Bradley has conducted continuous and systematic activities in Alabama. To support this assertion, Progressive contends that it has had a continuous business relationship with Bradley since 1985. This relationship consisted of sales and solicitations of business and visits to Alabama by Bradley executives. Progressive also notes that it was not Bradley's only customer in Alabama during this period. Additionally, Progressive claims that Bradley has two agents in Alabama attempting to obtain business. Finally, Progressive states that it has sold Bradley over $70,000 of equipment and that it has purchased over $600,000 of equipment from Bradley.

Progressive next contends that this court has specific jurisdiction over Bradley. Progressive explains that the Eleventh Circuit has three primary considerations when determining specific jurisdiction: (1) purposeful availment of the forum state; (2) the cause of action arises out of the activities of which one purposefully avails oneself; and (3) there is reasonable foreseeability that a defendant should anticipate being haled into court there. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250-51 (11th Cir. 2000). Progressive argues that all three conditions are present in this action.

First, Progressive asserts that Bradley purposefully availed itself of this forum. Progressive states that Bradley's argument that since the PPBA is not a valid and enforceable contract it should not be considered for purposes of establishing minimum contacts with Alabama is without merit. Progressive explains that the Supreme Court and the Eleventh Circuit

do not rely solely on the existence of a contract for purposes of determining minimum contracts; analyzing instead the entirety of the relationship between the parties and the forum state. *See Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627-28 (11th Cir. 1994). With that said, Progressive argues that the PPBA, the negotiations that led to it, and its performance over more than a decade demonstrate purposeful availment. Furthermore, Progressive cites *Francosteel* for the proposition "that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other state for the consequences of their activities." 19 F.3d at 628. It is Progressive's contention that Bradley has certainly reached out beyond Alabama by its continuous relationship with Progressive.

Second, Progressive argues that its cause of action arises out of the purposeful availment. Progressive claims that Bradley misappropriated its intellectual property rights. Additionally, Progressive contends that Bradley sold equipment and parts to it and that it bought equipment and parts from Bradley pursuant to the PPBA. In light of these facts, and because it is headquartered and maintains it only place of business in Alabama, Progressive concludes that the wrongful acts arose out of Bradley's purposeful availment of the forum.

Finally, Progressive contends that it was reasonably foreseeable to Bradley that it would be subject to jurisdiction in Alabama. Relying on *Calder v. Jones*, 465 U.S. 783 (1984), Progressive states that when conduct is intentional and the location of the party is known, it is reasonably foreseeable that party engaging in conduct will be subject to the jurisdiction where the harm occurs. 465 U.S. at 788. Furthermore, Progressive explains that this court should consider the following factors in determining whether this court's jurisdiction would comport with traditional notions of fair play and substantial justice: "(a) the burden on the defendant, (b)

9

the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (e) the shared interest of the several States in furthering fundamental substantive social policies." *Future Tech.*, 218 F.3d at 1251. Progressive argues that an examination of these factors reveals that jurisdiction in this court would comport with traditional notions of fair play and substantial justice.

First, Progressive contends that there would be no great burden on Bradley to have to litigate this action in Alabama because it had sales of $3,013,931 in 2000. Second, it argues that states have a compelling interest in adjudicating disputes based on intentional tortious conduct that injures one of its residents. *Citing Keeton v. Hustler Magazine*, 465 U.S. 770 (1984); *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843 (11th Cir. 1988). Third, Progressive asserts that it would be more convenient to litigate in Alabama because it has suffered some business setbacks since 1998 that would make it difficult to bring the action in Pennsylvania. Fourth, it argues that the interstate judicial system's interest in efficient resolution favors jurisdiction in this court.[4] Finally, Progressive states that the shared interest among the states in furthering substantive social policies leads to a determination of jurisdiction in this court because Alabama has an interest in protecting the trademarks and patents of its citizens.

### 28 U.S.C. § 1406(a)

Bradley contends that if this court decides not to dismiss this action for lack of personal jurisdiction, it should transfer it to the Middle District of Pennsylvania pursuant to 28 U.S.C. §

---

[4] Progressive argues that Bradley's reliance on the 1999 Federal Court Management Statistics is flawed for two reasons. First, Progressive contends that instead of relying on the time from filing to time of disposition, this court should instead consider the time of filing to time of trial. Second, the 2000 Federal Court Management Statistics reveal that the time from filing to trial is only twenty-two months in the Northern District of Alabama; compared to twenty-one months in the Middle District of Pennsylvania.

1406(a). Bradley argues that this statute provides that the district court in which a case is filed laying venue in the wrong division or district shall dismiss, or in the interest of justice, transfer the case to any district or division in which it could have been originally brought. Bradley claims that since this court lacks personal jurisdiction, venue is improper, and therefore the case should be transferred.

In contrast, Progressive argues that 28 U.S.C. § 1391 requires that when jurisdiction is founded only on diversity of jurisdiction, the action can be brought only in a judicial district where any defendant resides. In addition, Progressive notes that 28 U.S.C. § 1391 provides that a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction. Since Progressive believes that Bradley is subject to the personal jurisdiction of this court, it concludes that venue is proper in this district and transfer is inappropriate.

**28 U.S.C. § 1404(a)**

Finally, Bradley argues that the interests of justice weigh heavily in favor of transferring the case to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). Bradley contends that the Eleventh Circuit relies on the following factors when deciding whether to transfer: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses, and the availability of the witnesses through compulsory process; (4) the location of documents and other sources of proof; (5) the relative ability of the parties to bear the expense of changing the forum; and (6) trial efficiency and expense to the justice system. *Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 134 (M.D. Ala. 1998).

Turning to these factors, Bradley argues that the first factor is not dispositive of the issue because the operative facts underlying the allegations in the complaint did not occur within the

11

State of Alabama. *Relying on Garay v. BRK Elecs.*, 755 F. Supp. 1010, 1011 (M.D. Fla. 1991). Bradley contends that the second factor does not weigh in either party's favor because it would be equally convenient for either party to have the action in its home state. It argues that the third factor weighs in its favor because while there are no witnesses other than the parties in Alabama, there are witnesses other than the parties in Pennsylvania.[5] Bradley believes that the fourth factor is in its favor because the key documents for it are at its offices in Pennsylvania and England, while Progressive's documents have already been produced along with its Rule 26 disclosures. Bradley claims that the fifth factor weighs in favor of transfer because Progressive had sales reaching 3.5 million in 1998 and ranks in the lowest risk category with respect to financial stress and credit.[6] Finally, Bradley argues that the sixth factor weighs in favor of transfer because the Middle District of Pennsylvania will probably hear the case sooner than the Northern District of Alabama.[7]

In response, Progressive claims that although the *Gould* factors are to be considered, the Eleventh Circuit has determined that the plaintiff's choice of forum should not be disturbed unless "the movant can show that it is clearly outweighed by other considerations." *Gould*, 990 F. Supp. at 1354. Furthermore, Progressive states that although 28 U.S.C. § 1404(a) provides for transfer to a more convenient forum, it does not provide for transfer to one that is likely to prove equally convenient or inconvenient. *Folkes v. Haley*, 64 F. Supp. 1152 (M.D. Ala. 1999).

---

[5] Bradley claims that convenience of the witnesses is the "most important factor" in deciding whether or not to transfer. *Gould*, 990 F. Supp. at 1359.

[6] Bradley relies on a Dun and Bradstreet Report for this assertion.

[7] Bradley relies on the 1999 Federal Court Management Statistics for this assertion. Bradley notes that it takes an average of eight months from date of filing to date of disposition in the Middle District of Pennsylvania. In contrast, Bradley states that it takes approximately thirty-seven months from date of filing to date of disposition in the Northern District of Alabama.

Progressive argues that Bradley has failed to demonstrate that other considerations clearly outweigh its chosen forum and that Bradley has only demonstrated that changing venue best serves its interest of convenience.

Turning to the *Gould* factors, Progressive first argues that federal courts accord great deference to the plaintiff's choice of forum. *See Owens v. Blue Tee Corp.*, 177 F.R.D. 673, 678 (M.D. Ala. 1998). Second, Progressive contends that Bradley's argument that either forum would be equally convenient is misplaced because 28 U.S.C. § 1404(a) only provides for transfer to a more convenient forum, not a forum likely to prove equally convenient. *Van Dusen v. Barrack*, 376 U.S. 612, 645 (1966). Third, Progressive argues that the convenience of the witnesses factor weighs in its favor because the majority of the witnesses reside outside the State of Pennsylvania. Progressive claims that the fourth factor weighs in its favor because the majority of the documents are located at its headquarters in Sylacauga, Alabama. It also claims that the fifth factor requires a finding that transfer is inappropriate because it is a small corporation with three key employees and it has not been as profitable over the past couple of years. Finally, Progressive argues that the sixth factor weighs against transfer because the 2000 Federal Court Management Statistics demonstrate that the Northern District of Alabama will hear the case sooner than the Middle District of Pennsylvania.[8]

## ANALYSIS

The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *S & D Int'l, Inc. v. Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000) (quoting *Taylor v. Phelan*, 912

---

[8] Progressive notes that it currently takes an average of twelve and six-tenths months from the date of filing to disposition in the Northern District of Alabama. In the Middle District of Pennsylvania it currently takes an average of eight and nine-tenths months from date of filing to disposition. However, Progressive explains that this case was filed approximately three months ago, thus any transfer would negate the benefit of changing venue.

F.2d 429, 431 (10th Cir. 1990). However, when a district court does not conduct an evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must only establish a prima facie case of personal jurisdiction over the non-resident defendant. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). A plaintiff establishes a prima facie case when it presents enough evidence to withstand a motion for directed verdict. *Id.* The district court must accept the facts as alleged in the complaint as true, but only to the extent they are uncontroverted by the defendant's affidavits. *Id.* Where a factual conflict is present and the court does not conduct an evidentiary hearing, the court must construe all reasonable inferences in favor of the non-moving party. *Id. See also Francosteel*, 19 F.3d at 626; *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir. 2000). Whether a district court conducts an evidentiary hearing is discretionary. *Madara*, 916 F.2d at 1514; *Ruiz de Molina*, 207 F.3d at 1356. In assessing the propriety of a motion to dismiss for lack of jurisdiction, a district court is not limited to inquiry into undisputed facts; the court may hear conflicting evidence and decide for itself factual issues that determine jurisdiction. *See Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243-44 (11th Cir. 1991) (dealing with subject matter jurisdiction). A plaintiff should generally have ample opportunity to present evidence bearing on the existence of jurisdiction. *Id.* In summary, if a material issue is contested and there is conflicting evidence, a court must either deny the motion to dismiss and postpone any further jurisdiction challenge until trial, or hold a preliminary evidentiary hearing.

  As an initial matter, the court notes that there are two types of personal jurisdiction: general and specific. *See, e.g., Madara*, 916 F.2d at 1516 n.7. "Specific personal jurisdiction is founded on a party's contacts with the forum state that are related to the cause of action. General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the

litigation." *Id.* (citing *Helicopteros Nacionales de Colombia N.A. v. Hall*, 466 U.S. 408, 414 n. 8, 9 (1984); *Cable/Home Comm. Corp. v. Network Prod., Inc.*, 902 F.2d 829, 857 n.41 (11th Cir. 1990); *Morris v. SSE, Inc.*, 843 F.2d 489, 491 n.2 (11th Cir. 1988)).

Courts employ a two-part analysis when determining whether they have personal jurisdiction over a non-resident. *Madara*, 916 F.2d at 1514. A court first determines whether jurisdiction is proper under the forum state's long arm statute. *Id.* If the first prong is met, the court next considers whether its exercise of jurisdiction will offend federal due process requirements. *Francosteel*, 19 F.3d at 627. This second prong is itself a two-part inquiry. *Madara*, 916 F.2d at 1515-16. First, the court must decide whether the defendant has established "minimum contacts" with the forum state. *Id.* Second, the court must decide whether the exercise of personal jurisdiction over the defendant would offend "traditional notions of fair play and substantial justice." *Id.* (citing *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 392 (11th Cir. 1988) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1940)). If all of these elements are met, the court may exercise jurisdiction over the defendant.

The first question for this court, then, is whether jurisdiction is proper under Alabama's long arm statute. Alabama's long-arm statute provides, in pertinent part, that:

> "[a] person has sufficient contacts with the state when that person ... otherwise having some minimum contact with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action ... so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States."

*Ala. R. Civ. P.* 4.2(a)(2)(I). As such, the Alabama long-arm statute is as broad as is permissible under the limits of federal due process. *See Ala. Waterproofing Co., Inc. v. Hanby*, 431 So. 2d 141, 145 (Ala. 1983); *Oliver v. Merritt Dredging Co., Inc.*, 979 F.2d 827, 830 (11th Cir. 1992);

1992); *Butler v. Beer Across America*, 83 F. Supp. 2d 1261, 1265-66 (N.D. Ala. 2000). Because the Alabama inquiry and federal inquiry as to personal jurisdiction are coextensive, this court need only consider whether the exercise of specific personal jurisdiction here will satisfy the federal requirements of due process. *Oliver*, 979 F.2d at 830; *Banton Indus., Inc. v. Diamatic Die & Tool Co.*, 801 F.2d 1283, 1284 (11th Cir. 1986); *Butler*, 83 F. Supp. 2d at 1266. The court next turns to the federal due process requirements.

**Minimum Contacts**

"Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires that the defendant have 'fair warning' that a particular activity may subject him [or her] to the jurisdiction of a foreign sovereign." *Madara*, 916 F.2d at 1516 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1977) (Stevens, J., concurring in judgment)). A defendant has established minimum contacts with the forum state for purposes of personal jurisdiction when his contacts with that state are "substantial enough that [he] reasonably could expect to be haled before [that forum's] court." *Delong Equip. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 853 (11th Cir. 1988). A defendant should possess this reasonable expectation "if the defendant purposefully directs its activities at forum residents and 'the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id.* (quoting *Burger King*, 471 U.S. at 472). According to the Supreme Court in *Burger King*, "[w]here the defendant 'deliberately' has engaged in significant activities within a State . . . he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws, it is presumptively not unreasonable to require him to submit to the burdens of the litigation in the forum as well." 471 U.S. at 476.

Jurisdiction is proper where the defendant has proximately created, through his or her own actions, a "substantial connection" with the forum state. *Burger King*, 471 U.S. at 475 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Jurisdiction is also proper when the defendant has purposely availed itself of the benefits and protections of the laws of the forum state. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Ruiz de Molina*, 207 F.3d at 1356.

**Fair Play and Substantial Justice**

Once the first prong of the due process test is satisfied, the court next looks to whether its assertion of personal jurisdiction over the defendant would comport with "fair play and substantial justice." *See Madara*, 916 F.2d at 1517 (citing *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320)). The factors utilized by courts are the burden on the defendant in defending the lawsuit in the subject forum, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective judicial relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering their own state policies. *See Madara*, 916 F.2d at 1517 (citing *Burger King*, 471 U.S. at 177; and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

## CONCLUSION

After considering the evidence, the court concludes that there is not likely sufficient evidence to establish general personal jurisdiction. There is, however, substantial evidence to establish specific personal jurisdiction. Defendant's agents made a number of visits to Alabama, participated in significant negotiations in Alabama and established an on-going relationship with the Plaintiff in Alabama. The court cannot, of course, determine whether there is any merit to Plaintiff's claims. The claims, however, all relate to a continuing relationship between the

parties.[9] The case is one in which personal jurisdiction may well lie over both parties in at least two different states because of the nature of the relationship. The Defendant has established at least minimum contacts in Alabama. Requiring the Defendant to defend here will not offend traditional notions of fair play. The nature of the continuing relationship was such that Defendant could have anticipated being haled into court here.

The court concludes that the motion to dismiss is due to be denied. For similar reasons the court will deny the motion to transfer.

This _27_ day of August, 00 )

/s/ Robert B. Propst
ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

---

[9] The Defendant places great emphasis on the argument that personal jurisdiction is not appropriate in this court because the PPBA is allegedly not an enforceable contract and that the acts complained of by the Plaintiff did not occur in Alabama. This argument is unavailing. The focus of the personal jurisdiction inquiry involves a determination of whether the Defendant has established minimum contacts with the forum state that are substantial enough that it should expect to defend an action before that forum's court. The Defendant's negotiations, visits, purchases, sales, and communications with the Plaintiff over the last fifteen years are sufficient minimum contacts with this forum that it should have reasonably expected to defend the present actions in this forum.